# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EL SHAFIYQ ASAD ALI,<br>    Plaintiff,<br><br>v.<br><br>REP. JOANNA MCCLINTON,<br>Individually and in her official capacity as<br>Pennsylvania State Representative, and<br>PENNSYLVANIA HOUSE OF<br>REPRESENTATIVES,<br>    Defendants. | CIVIL ACTION<br>No. 16-6373<br><br>FILED<br>JUN 1 4 2017<br>KATE BARKMAN, Clerk<br>By_____Dep. Clerk |

**MCHUGH, J.**                            **June 14, 2017**

## MEMORANDUM

This case concerns a suit by Plaintiff El Shafiyq Asad Ali against his former employers, Defendants Pennsylvania House of Representatives and Representative Joanna McClinton. Ali maintains that Defendants violated the First Amendment and Pennsylvania's Whistleblower Law when they fired him for reporting McClinton's use of state resources to promote her church. The primary legal issue before me now is whether Ali's claims are barred by statutory and Eleventh Amendment immunity. I conclude that his claims against the House of Representatives and against McClinton in her official capacity must be dismissed. But because Pennsylvania's Whistleblower Law waives statutory immunity, and because Eleventh Amendment immunity does not bar suits against individual state officers in their personal capacity, Ali may proceed with his First Amendment and whistleblower claims against McClinton in her personal capacity.

1

## I. FACTS

For roughly nine months, from September 2015 until June 2016, El Shafiyq Asad Ali worked as Director of Constituent Services for Joanna McClinton, a member of the Pennsylvania House of Representatives. Ali, who describes himself as an "American-Indian" and a practicing Muslim, claims that his ethnicity and religious beliefs set him apart from his African-American, Christian boss and co-workers. For instance, Ali claims that "McClinton and members of her staff asked [him] on multiple occasions how he became an American-Indian," Compl. ¶ 10, and that his coworkers (though apparently not McClinton herself) "repeatedly asked [him] whether he was a practicing Muslim," ¶ 11. Ali further maintains that McClinton invited her staff members to worship with her at the Open Door Mission True Light Church (Church), where she served as a minister. Ali never accepted McClinton's invitation and contends that he was treated less favorably than staff members who did. ¶ 12.

The events giving rise to this case occurred in the spring of 2016, when McClinton asked Ali to organize an event at the Philadelphia Housing Authority's Bartram Village site. According to Ali, the purpose of the event was to promote a "facility" that the Church planned to open nearby. ¶ 14. Ali claims that McClinton told him to "ensure that only Christian music, and not any 'worldly' music would be played at the event," ¶ 15, and further directed him to work closely with her mother, Rachel, who was also a minister at the Church, ¶ 13. Ali maintains that the Church held a similar event at Bartram Village the year before, which it paid for itself. By contrast, the event that he was asked to organize was to be paid for using Housing Authority funds. ¶ 16.

Uncomfortable with what he perceived to be state-sponsored religious advocacy, Ali expressed doubts to McClinton about the propriety of the Bartram Village event, but was told to proceed with planning. Ali next raised his concerns in an e-mail to Eric Fillman, Ethics Counselor for the Pennsylvania House of Representatives. Fillman replied the following day, and told Ali that

2

he had spoken to McClinton and concluded that the Bartram Village event did not present "any ethical conflicts of interest." ¶ 19. "Approximately a week later," McClinton allegedly told Ali that he "had been doing things without her approval," and instructed him "to write daily logs detailing his work activity." ¶ 20. Roughly two weeks after that conversation, Ali claims that McClinton falsely accused him of failing to schedule a meeting with two of her constituents and then fired him without further explanation.

Ali filed suit against McClinton and the Pennsylvania House of Representatives under 42 U.S.C. § 1983 and Pennsylvania's Whistleblower Law, 43 Pa. Stat. and Cons. Stat. Ann. §§ 1421–1428. Before me now is Defendants' Motion to Dismiss pursuant to Rule 12(b)(6). For the following reasons, that motion will be granted in part and denied in part.

## II. STANDARD

This motion is governed by the well-established standards of Fed. R. Civ. P. 12(b)(6), as amplified by *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

## III. DISCUSSION

### A. Claims under Pennsylvania's Whistleblower Law

Ali brings claims under Pennsylvania's Whistleblower Law against the House of Representatives and against McClinton in her official and personal capacity. The Whistleblower Law provides that "[n]o employer may discharge, threaten or otherwise discriminate or retaliate against an employee . . . because the employee . . . makes a good faith report or is about to report . . . an instance of [(1)] wrongdoing or [(2)] waste by a public body." § 1423. Employers covered by the law include "state officer[s]," like McClinton, as well as the "General Assembly and its agencies." § 1422. The law empowers a "person who alleges a violation of this act [to] bring a civil action . . . for appropriate injunctive relief or damages, or both." § 1424. Ali characterizes his

3

e-mail to Eric Fillman, the House Ethics Counselor, as a good faith report of both waste and of wrongdoing. He argues that McClinton and the House of Representatives violated the Whistleblower Law when they fired him for making this report.

The threshold question is whether Defendants enjoy immunity from Ali's whistleblower suit. In support of immunity, they point to 1 Pa. Cons. Stat. Ann. § 2310, which provides that:

> The Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.

McClinton and the House of Representatives also argue that Ali's claims must be dismissed based on the doctrine commonly referred to as "Eleventh Amendment immunity," which bars private suits for damages against unconsenting states.[1] Ali counters that the General Assembly's passage of the Whistleblower Law waived both statutory and Eleventh Amendment immunity from suits arising under the law, thereby opening the Commonwealth and its officials to suits in state or federal court. There are problems with each side's position.

Defendants err when they claim that § 2310 mandates dismissal of Ali's whistleblower suit. By creating a private right of action against Pennsylvania's government, the Whistleblower Law necessarily demonstrates the General Assembly's intention to waive statutory immunity and, at least with respect to suits in state court, Eleventh Amendment immunity. To hold otherwise would nullify the law's protections for public employees. Not surprisingly then, Pennsylvania's consent to whistleblower suits has been assumed in countless state court actions since the law's enactment, and

---

[1] The parties refer to Eleventh Amendment immunity and I will follow their lead here. But as the Supreme Court explained in *Alden v. Maine*, 527 U.S. 706, 713 (1999), "[t]he phrase ['Eleventh Amendment immunity'] is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment. Rather . . . the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today (either literally or by virtue of their admission into the Union upon an equal footing with the other States) except as altered by the plan of the Convention or certain constitutional Amendments."

4

the only other court to squarely consider waiver of statutory immunity reached the same conclusion that I reach here. *See Halstead v. Motorcycle Safety Found. Inc.*, 71 F. Supp. 2d 464, 471–72 (E.D. Pa. 1999) ("[I]t is clear that the Pennsylvania legislature effectively abrogated the Commonwealth's sovereign immunity when it enacted the Whistleblower Law."). "[U]nder the *Erie* doctrine, state rules of immunity govern actions in federal court alleging violations of state law." *Benning v. Bd. of Regents of Regency Univ.*, 928 F.2d 775, 777 (7th Cir. 1991). Given that § 2310 would not bar Plaintiff's claim in state court, it does not bar his claim here.

The inquiry, however, does not end there. That is because "[a] State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation." *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676 (1999). The Supreme Court has cautioned that a state's waiver of Eleventh Amendment immunity in federal court "must be unequivocally expressed in the text of the relevant statute," *Sossamon v. Texas*, 563 U.S. 277, 284–85 (2011), but the Whistleblower Law contains no such provision. Moreover, as my colleague Judge Baylson found, the Whistleblower Law's legislative history shows that its drafters contemplated suits against the Commonwealth in state court, but never discussed the possibility of federal jurisdiction. *Bradley v. W. Chester Univ. of the Pa. State Sys. Higher Educ.*, 182 F. Supp. 3d 195, 201 (E.D. Pa. 2016). Because a state's consent to suit in federal court "may not be implied," and because any "waiver of sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign," *Sossamon*, 563 U.S. at 284–85, I find that the Whistleblower Law does not waive Eleventh Amendment immunity with respect to suits in federal court. Eleventh Amendment immunity therefore bars Ali's whistleblower claims against the House of Representatives and against McClinton in her official capacity, which is treated "no different[ly] from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

5

But the immunity analysis differs for Ali's claim against McClinton in her personal capacity. The Supreme Court recently reiterated that Eleventh Amendment immunity "does not erect a barrier against suits to impose individual and personal liability." *Lewis v. Clarke*, 137 S. Ct. 1285, 1292 (2017). To determine whether a suit is properly construed as an action against an individual state actor rather than the state itself, "courts may not simply rely on the characterization of the parties in the complaint, but rather must determine in the first instance whether the remedy sought is truly against the sovereign." *Id.* at 1285. Applying this approach, the Court has generally treated suits against individual officers as "personal capacity" actions when the remedy sought is monetary damages—unless "the judgment . . . would expend itself on the public treasury or domain, or interfere with the public administration." *Dugan v. Rank*, 372 U.S. 609, 620 (1963).[2] By way of illustration, in *Hafer v. Melo*, 502 U.S. 21 (1991), the Court found that a § 1983 suit seeking damages for wrongful termination was an action against an individual state officer. By contrast, in *Edelman v. Jordan*, the Court held that a class action suit to compel payment of wrongfully withheld welfare benefits was an action against the state itself since the damages sought would "inevitably come from [Illinois'] general revenues," not "the pocket of petitioner Edelman." 415 U.S. 651, 664–65 (1974).

Ali's suit against McClinton is properly construed as a personal capacity action. McClinton concedes that she alone made personnel decisions concerning her legislative staff and notes that her decision to fire Ali was not compelled by any state law or regulation. Liability arising out of that decision is therefore properly ascribed to McClinton, not to the Commonwealth. Moreover, the remedy that Ali seeks—a monetary award for wrongful termination—is effectively the same as the

---

[2] The Court clarified in *Lewis* that the existence of an indemnification agreement between an individually-named officer and the state is immaterial to whether a suit was brought against the state. "The critical inquiry is who may be legally bound by the court's adverse judgment, not who will ultimately pick up the tab." 137 S. Ct. at 1293–94.

remedy sought by the plaintiffs in *Hafer*, where the Supreme Court concluded that the individually named officer was the real party in interest.

With the immunity bar removed, I have little trouble finding that Ali has stated a colorable whistleblower claim based on his report of waste. The Whistleblower Law defines "waste" as "conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources." § 1422. Ali claims that McClinton abused or misused state resources when she directed her staff to organize what amounted to a promotional event for her church. McClinton makes three arguments in reply.

First, she maintains that Ali's claim must be dismissed because Eric Fillman, the House Ethics Counselor to whom Ali reported his concerns, did not bring formal charges against her. But according to the Complaint, Fillman concluded only that McClinton's actions did not pose a conflict of interest. This opinion regarding a specific ethical issue did not purport to absolve McClinton of any and all "abuse" or "misuse" of funds. Furthermore, McClinton does not explain why Fillman's undocumented opinion, rendered only one day after Ali contacted him, should be accorded controlling weight in this matter. The statute does not recognize as a defense internal approval by a fellow governmental employee. At most, and I emphasize that the issue is not before me, endorsement of a defendant's conduct *might* have evidentiary value. It cannot be considered dispositive of whether there was "waste," as defined by the statute.

Relying on *Bennett v. Republic Services, Inc.*, 179 F. Supp. 3d 451 (E.D. Pa. 2016), McClinton next argues that the alleged waste in question was not "substantial waste" within the meaning of the statute since it was confined to a single incident. *Bennett*, however, is clearly distinguishable. That case concerned an isolated allegation of timesheet fraud; the waste at issue was therefore limited to—at most—a few hours' pay for a garbage truck driver. *Id.* at 454. Moreover, Judge Pappert concluded that because the defendant waste hauler was a private company

7

with a government contract, it was unclear whether the defendant misused public or private funds. *Id.* at 455. Here, by contrast, the allegations of waste concern exclusively public resources: legislative staff time to plan the event, and Philadelphia Housing Authority funds to put it on. Although the scale of the waste is uncertain, unlike *Bennett* it cannot be characterized as *de minimis*.

Finally, McClinton argues that Ali has failed to establish a causal relationship between his report of waste and his termination, as required under the Whistleblower Law. This argument fails as well. "Causation under the Whistleblower Law is proved in the same way as under Title VII and § 1983[.]" *Boyer v. City of Philadelphia*, No. CV 13-6495, 2015 WL 9260007, at *7 (E.D. Pa. Dec. 17, 2015). To prevail, Ali "must prove either (1) an unusually suggestive temporal proximity between" the good faith report of waste "and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Ali succeeds under the causation test's second prong. The Complaint alleges that McClinton became aware of Ali's report when she was contacted by Fillman on May 26. "Approximately a week later," McClinton allegedly told Ali that he "had been doing things without her approval"—an apparent reference to his ethics complaint. Compl. ¶ 20. She then instructed him to keep a log of his daily activities, a requirement not imposed on any other members of her staff. Two weeks after that, Ali claims that McClinton falsely accused him of failing to schedule a constituent meeting and then fired him without offering any further explanation. Giving Ali the benefit of the doubt, I find that these allegations create a plausible inference that the report to Fillman touched off a series of retaliatory actions by McClinton, and led, in short order, to Ali's pretextual termination.

On the other hand, Ali's whistleblower claim based on his report of wrongdoing will be dismissed, albeit with leave to amend. "Wrongdoing" under the Whistleblower Law is specifically

8

and narrowly defined as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." § 1422. This language has been read to impose an objective requirement: a report of wrongdoing must involve an *actual* violation of a law, regulation, or rule before it can support a whistleblower action. *Kimes v. Univ. of Scranton*, 126 F. Supp. 3d 477, 505 (M.D. Pa. 2015). Relying on this interpretation, McClinton argues that Ali fails to state a cognizable whistleblower claim because he does not identify the law or rule that she allegedly broke when she organized the Bartram Village event.

Courts in this circuit disagree over what is required to plead a whistleblower action based on a report of wrongdoing. Some will dismiss a complaint that fails to identify explicitly a law, regulation, or rule that was allegedly violated. *See, e.g., Bifano v. Borough*, No. CV 3:16-0245, 2016 WL 7404610 (M.D. Pa. Dec. 22, 2016). Others take a less stringent approach, finding claims sufficiently pled when they generally allege that a vaguely defined rule or regulation has been violated. *See, e.g., Bielewicz v. Penn-Trafford Sch. Dist.*, No. CIV.A. 10-1176, 2011 WL 1486017 (W.D. Pa. Feb. 9, 2011), *report and recommendation adopted*, No. CIV.A. 10-1176, 2011 WL 1399839 (W.D. Pa. Apr. 13, 2011). Ali's claim must be dismissed under either approach: he not only fails to name the rule that McClinton allegedly broke, he fails to allege she broke any rules whatsoever. The closest Ali comes to an allegation of wrongdoing is his statement that McClinton's role in the Bartram Village event caused him "concern." ¶¶ 17–18. Ali's personal reservations about McClinton's conduct cannot constitute wrongdoing within the meaning of the Whistleblower Law. Though Ali does not have to prove at the pleading stage that McClinton broke the law, he must at least give notice of the statute, rule, or regulation that McClinton allegedly violated in order to provide content for his claim. Accordingly, Ali's whistleblower claim based on his report of wrongdoing will be dismissed with leave to amend.

9

### B. Claims under 42 U.S.C. § 1983

To prevail on his § 1983 claims, Ali must prove that McClinton deprived him of a federal right while "acting under color of state law." *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011). As an initial matter, Defendants argue that Ali's claims against McClinton in her official capacity and against the House of Representatives are barred by Eleventh Amendment immunity. In reply, Ali invokes *Ex Parte Young*, which holds that suits against state officers in their official capacity are not barred by Eleventh Amendment immunity when the remedy sought is prospective injunctive relief. 209 U.S. 123 (1908). The problem with this argument is that Ali has not asked for an injunction. Although his prayer for relief includes a request for "any additional relief which this Honorable Court deems appropriate," this generic language is preceded by five specific requests for monetary damages. Compl. at 6. A boilerplate appeal for "any other relief" does not bring this case within the scope of *Ex Parte Young*. Accordingly, Ali's § 1983 claims against McClinton in her official capacity and against the House of Representatives will be dismissed. But, for the reasons already discussed at length, Eleventh Amendment immunity does not bar Ali's § 1983 claims against McClinton in her personal capacity.

McClinton next argues that the § 1983 claims against her should be dismissed because she did not act under color of state law when she fired Ali. According to McClinton, because she was not legally obligated to employ a staff, her authority to hire and fire Ali was "not derived from any state statute or regulation" and she merely "operat[ed] her office as any supervisor in the private sector might." MTD at 13. I disagree. "[T]he essence of section 1983's color of law requirement is that the alleged offender, in committing the act complained of, abused a power or position granted by the state." *Bonenberger v. Plymouth Township*, 132 F.3d 20, 24 (3d Cir. 1997). Unlike a private sector employer, McClinton paid Ali using taxpayer dollars. In hiring Ali and supervising his actions, McClinton necessarily drew on her authority to direct the expenditure of public funds.

10

Because she possessed this authority only by virtue of her status as a State Representative, I find McClinton's actions were clearly undertaken "under color of state law."[3]

Proceeding to the merits, the First Amendment's Establishment Clause "prohibits the government from promoting or affiliating itself with any religious doctrine or organization, discriminating among persons on the basis of their religious beliefs and practices, delegating a governmental power to a religious institution, and involving itself too deeply in such an institution's affairs." *Doe v. Indian River Sch. Dist.*, 653 F.3d 256, 269 (3d Cir. 2011). Similarly, the Free Exercise Clause "categorically prohibits government from regulating, prohibiting, or rewarding religious beliefs as such." *McDaniel v. Paty*, 435 U.S. 618, 626 (1978). Thus, the "loss of a job opportunity for failure to compromise one's convictions states a constitutional claim" under the First Amendment. *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 77 (1990) (citing *Torcaso v. Watkins*, 367 U.S. 488 (1961)).

Applying these general principles, I have little trouble identifying a cognizable claim under the First Amendment. Read in the light most favorable to Ali, the Complaint shows that McClinton marshaled state resources to promote her church, repeatedly asked Ali to attend services at that church, and then fired Ali for his refusal to participate in the planning of the Bartram Village event, his refusal to join her congregation, or both. Such state-sponsored proselytizing surely runs afoul of the First Amendment's command that government refrain from "openly or secretly practicat[ing] in the affairs of any religious organizations or groups and vice versa." *Everson v. Bd. of Ed.*, 330 U.S. 1, 16 (1947). Ali's First Amendment claim against McClinton in her personal capacity will survive the Motion to Dismiss.

---

[3] To support her "color of law" argument, McClinton cites *Polk County v. Dodson*, 454 U.S. 312 (1981), where the Supreme Court held that public defenders were not subject to § 1983 liability for actions undertaken in their representation of criminal defendants. But that case turned largely on the oppositional relationship between criminal defense attorneys and the state during trial; because a public defender was "not acting on behalf of the State," and was instead "the State's adversary," the Court reasoned that she could not logically have acted "under color of state law" while representing her client. 545 U.S. at 232 n.14. Nothing suggests that McClinton's interests in supervising a legislative staffer would be similarly at odds with those of the Commonwealth.

11

Ali also argues that McClinton discriminated against him on the basis of his ethnicity and his religion in violation of his rights under the Fourteenth Amendment's Equal Protection Clause. Neither theory succeeds. The only facts that Ali alleges to support his claim of ethnic discrimination are that McClinton and his co-workers asked him "how he became an American-Indian" but did not pose similar questions to African-American staff members, and that McClinton once told Ali that "he was 'less valuable' than an African-American coworker during a dispute between [Ali] and the coworker." Compl. ¶¶ 11–12. The arguably insensitive questions about Ali's background suggest that his colleagues were curious about his path to citizenship because they believed—rightly or wrongly—that he was born in another country. That the same questions were not asked of Ali's African-American colleagues demonstrates only that Black people in this country are not presumed to be recent immigrants. McClinton's statement that Ali was "less valuable" than an African-American colleague is likewise lacking in probative force. On its face, the remark does not smack of discrimination. Moreover, it was delivered in the context of a workplace dispute and therefore appears to have been a candid, if harshly phrased, assessment of Ali's job performance relative to that of his colleague—hardly grounds for an equal protection claim.

Ali's allegations of religious discrimination are similarly unsupported. He notes only that McClinton's staff (but not McClinton herself) asked him if he was a practicing Muslim, and that unlike some of his colleagues, Ali declined McClinton's invitation to worship at her church. Compl. ¶¶ 9–10. As noted above, McClinton's efforts to promote her church give rise to a colorable First Amendment claim, and it is plausible that Ali was fired because he voiced concerns about McClinton's conduct. But nothing in the Complaint demonstrates that Ali was fired because

12

he was Muslim, or even that McClinton herself was aware of his religious beliefs. His Fourteenth Amendment claims will therefore be dismissed.[4]

## IV. CONCLUSION

Ali's suit against McClinton in her official capacity and against the Pennsylvania House of Representatives is barred by Eleventh Amendment immunity and will be dismissed with prejudice. His suit against McClinton in her personal capacity is not barred on immunity grounds. Ali may proceed with his First Amendment claim and his whistleblower claim based on a report of waste, but his Fourteenth Amendment claims and his whistleblower claim based on a report of wrongdoing will be dismissed with leave to amend. An appropriate order follows.

Gerald Austin McHugh
United States District Judge

---

[4] Ali argues that his claim survives under *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008). In *Phillips*, a relaxed pleading standard was accepted for an equal protection claim premised upon a "class of one" theory. *Id.* at 244. However, the Supreme Court has ruled the "class of one" theory inapplicable in employment discrimination suits like Ali's. *Engquist v. Or. Dep't of Agr.*, 553 U.S. 591 (2008).